other evidence controverting the findings actually made in the judgment already entered was erroneous, but entirely immaterial, inasmuch as the court properly held that the judgment was conclusive as against the plaintiffs as to those matters which were actually determined therein. The damages awarded to the defendant were proved by the evidence that was presented.

A review of the voluminous record which has been presented shows that the defendant proved the counterclaim alleged, and the judgment should be affirmed, with costs. All concur.

(160 App. Div. 9)

### DALZELL v. WESTINGHOUSE ELECTRIC & MFG. CO.

(Supreme Court, Appellate Division, Second Department.   December 31, 1913.)

1. MASTER AND SERVANT (§ 177*)—INJURIES TO SERVANTS—FELLOW SERVANTS.

Defendant's fellow servants who were in charge of a dead motor, which was being switched from one track to another, allowed it to escape from their control, because the couplings were not made fast. The motor struck the tower car on which plaintiff was working, causing an injury. *Held* that, as the tower car in itself was a safe place of work, plaintiff cannot recover for injuries resulting from the collision; the negligence being that of his fellow servants.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 307, 352, 353; Dec. Dig. § 177.*]

2. MASTER AND SERVANT (§ 106*)—INJURIES TO SERVANT—LIABILITY OF MASTER.

In an action by a servant against his master, an electrical company, the master is not liable for defects in appliances furnished by the railroad company for whom the servant under its direction was doing work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 193–198; Dec. Dig. § 106.*]

3. MASTER AND SERVANT (§ 110*)—INJURIES TO SERVANT—APPLIANCES.

Where couplings were sufficient and would hold if properly made, the master is not required to furnish safety chains on switching engines as a precaution against negligence in making couplings.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 214, 214½; Dec. Dig. § 110.*]

Appeal from Trial Term, Westchester County.

Action by George Dalzell against the Westinghouse Electric & Manufacturing Company. From a judgment for plaintiff, defendant appeals. Reversed, and complaint dismissed.

Argued before JENKS, P. J., and THOMAS, CARR, RICH, and PUTNAM, JJ.

E. Clyde Sherwood, of New York City (Robert B. Cumming, of New York City, on the brief), for appellant.

Michael J. Tierney, of New York City, for respondent.

THOMAS, J. [1] It was necessary to switch to another track a dead motor in a railway yard. For this a live motor pushed it down a grade beyond the switch and then stopped to reverse its direction. But the coupling, which had not securely engaged, parted, and the dead motor continued into collision with a tower car on which plaintiff was

raised to adjust overhead wires, whereby he was hurt. The plaintiff was defendant's servant, as was O'Brien, the coupler and switchman. Day was the superintendent of the motors to be inspected and, if insufficient, to be made ready for use, but did not have jurisdiction of the plaintiff and his work. McGuire was the motorman or hostler on the live motor and was in the general service of the railway company. He and the motor were at Day's disposition for switching purposes or the movement of motors. When the live motor apparently made the coupling with the dead motor, McGuire did not draw on the coupling to discover whether it had actually engaged, but pushed, so that the fact of coupling was not tested. Automatic couplings sometimes fail to make securely, and negligence could be predicated upon the failure to make the test; but if the negligence is that of a coservant as to a detail the master is not liable.

The question submitted was whether the defendant furnished plaintiff a safe place to work. It was safe in itself. Its safe continuance was in part dependent upon a safe use of the track on which it was. It became unsafe because the dead motor collided with it. That happened because the coupling had not been securely made, and the fault of that was with the one who should have tested it to determine whether it had been made. That fault rested with McGuire, the engineer, O'Brien, the switchman, or Day, their superintendent. The last two were coservants of the plaintiff, and the failure related only to a detail of the work, to wit, testing the coupling, for which the master is not liable. If McGuire was at fault, the master is not liable for the omission of the detail, if he was plaintiff's fellow servant. If he was not defendant's servant, his fault is imputable to the railroad company.

[2, 3] It is urged that there was a negligent failure to have safety chains. That was not submitted to the jury as an independent question and, as to this defendant, should not have been. The defendant did not furnish the motor or motorman, and in that respect at least the railroad company participated in the undertaking and constrained the defendant to accept the equipment tendered. But, had the coupling been properly made, the accident would not have happened, and safety chains were not required on switching engines as precaution against negligence in making the coupling.

The judgment and order should be reversed, and the complaint dismissed, with costs. All concur.